**JACK GUTTMAN, INC.,**
**Plaintiff–Appellant,**

v.

**KOPYKAKE ENTERPRISES, INC.,**
**Defendant–Appellee.**

No. 02–1251.

United States Court of Appeals,
Federal Circuit.

DECIDED: Aug. 30, 2002.

Theodore R. Remaklus, Wood, Herron & Evans, L.L.P., of Cincinnati, OH, argued for plaintiff-appellant. With him on the brief were Kurt L. Grossman and Brett A. Schatz.

William E. Thomson, Jr., McCutchen, Doyle, Brown & Enersen, LLP, of Los Angeles, CA, argued for defendant-appellee. With him on the brief was Rajiv Yadav.

Before CLEVENGER, RADER, and BRYSON, Circuit Judges.

CLEVENGER, Circuit Judge.

In this patent infringement case, Jack Guttman, Inc. ("Guttman") appeals from an order of the United States District Court for the Southern District of Ohio denying its motion for a preliminary injunction. *See Jack Guttman, Inc. v. Kopykake Enters., Inc.,* No. 01–CV–800 (S.D.Ohio Feb. 19, 2002). Because the district court based its decision on an erroneous construction of the pertinent claim terms, we vacate and remand for further proceedings.

I

This case involves technology for creating intricately decorated baked goods, especially cakes, with the push of a button. Guttman is the assignee of U.S. Patent No. 6,319,530 B1 (the '530 patent) directed toward a method of copying an image onto an edible substrate sheet that can be placed directly on an iced baked good. This allows a baker to produce, for example, a birthday cake decorated with an edible version of the birthday child's photograph.

Douglas Stewart, the inventor of the '530 patent, conceived of using a color inkjet photocopy machine to copy a picture

and then print it, using edible ink, on an edible substrate sheet. Neither the photocopy machines nor the edible substrate sheets are novel. However, the edible sheets, which were developed for use in a silk-screening process, are delicate and heat-sensitive and therefore, according to the conventional wisdom, unsuitable for use in a photocopy machine. Photocopy machines typically send the paper through one or more sharp turns during the copying process, and the edible sheet breaks apart if bent too abruptly. Furthermore, conventional photocopy machines also heat the paper to set the ink or toner, and this heating process can degrade the edible sheet. Stewart solved the first problem by using a copier with a manual feed path that sends the paper—or in this case, the edible sheet—on a path through the copy machine that does not involve any damaging bends. The delicate edible sheets can also be fortified by adhering them to a carrier sheet for passage through the photocopier. In addition, Stewart's invention either disables or removes the heaters to prevent heat-degradation of the edible sheet. In other respects, Stewart's method resembles a conventional photocopy process, in which the image to be copied is placed on the scanner portion of the photocopy machine, an edible sheet is placed in the appropriate paper feed location, the user pushes a button, and the machine scans the image and then copies it—in edible ink—onto the edible sheet. The baker then places the edible sheet on the surface of an iced baked good to create a personalized item for the customer.

Kopykake Enterprises, which sells supplies for cake-decoration, produces and sells several machines for reproducing color photographs onto an edible substrate sheet for placement on a cake, including the Kwik Kopy Cake Decorating System.

The Kwik–Kopy is a commercial inkjet printer modified to use edible ink and attached directly to a commercial scanner. The user simply places the desired image on the scanner, puts an edible sheet in the paper feed of the printer, and presses a button. The scanner scans the image and the printer reproduces it onto the edible sheet.

On November 21, 2001, one day after the issuance of the '530 patent, Guttman sued Kopykake for infringing and inducing infringement of the '530 patent by marketing and selling the Kwik Kopy machine. For purposes of this appeal, the sole claim at issue is independent claim 11:

> A method of reproducing an image onto an edible web for decorating an iced bake[d] good with an image comprising:
>
> placing the image on a copy glass of a *photocopy machine;*
>
> passing an edible web along an *elongated, non-tortuous copy path* in the *photocopy machine* without substantially heating the edible web, with no portion of the copy path overlapping another portion thereof and such that the edible web passes along the copy path without following any *tortuous bends;* and
>
> reproducing the image on the copy glass onto the edible web with edible ink as it passes along the copy path.

'530 Patent, col. 8, lines 15–27 (emphases added). The emphases indicate the disputed claim terms.

Guttman moved for a preliminary injunction, which the court denied because it found that Guttman was unlikely to prove infringement. The district court declined to construe the claim terms definitively at such an early point in the litigation. However, the court did tentatively construe the

claims as necessary to decide whether a preliminary injunction should issue. With respect to claim 11, the only claim before us on appeal, the court held that "[a] bend is tortuous if it significantly deforms the line preceding it." *Guttman*, slip op. at 4. In so holding, the court rejected Guttman's proposed construction, which was based on a definition of "non-tortuous" provided by the patentee during prosecution. The district court concluded that Guttman "has not demonstrated a likelihood that use of Kwik Kopy infringes ... because the ... copy path does seem to follow a 'tortuous bend[].'" *Id.* (third alteration in original).

The court also tentatively assigned "photocopy machine" its ordinary meaning, which the district court understood to be the meaning that most laypeople would assign to it, *i.e.*, a standard office photocopy machine. The court rejected Guttman's argument that the patent explicitly defines "photocopy machine" to include a scanner working in tandem with a separate printer. Because the court did not believe that an inkjet printer connected to a commercial scanner was a conventional photocopy machine, it held that Guttman likely would fail to show that the accused device meets the "photocopy machine" limitation of claim 11. *Id.*

Because it found that Guttman failed to show likelihood of success on the merits, the court denied the motion for a preliminary injunction. Guttman now appeals. We exercise jurisdiction over this appeal under 28 U.S.C. §§ 1292(c)(1) and 1295(a)(1).

## II

■ "The grant or denial of a preliminary injunction pursuant to 35 U.S.C. § 283 is within the discretion of the district court," *Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*, 77 F.3d 1364, 1367, 37 USPQ2d 1773, 1775 (Fed.Cir.1996), and we will reverse "only upon a showing that the court abused its discretion, committed an error of law, or seriously misjudged the evidence," *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 236 F.3d 1363, 1367, 57 USPQ2d 1542, 1544–45 (Fed.Cir.2001). We review *de novo* legal issues, including claim construction, that underlie the trial court's denial of a preliminary injunction, *id.*, and we may reverse the denial of a preliminary injunction if we find that the district court "exercised its discretion based upon an error of law," *Novo Nordisk*, 77 F.3d at 1367, 37 USPQ2d at 1775.

■ To obtain a preliminary injunction, a party must show (1) reasonable likelihood of success on the merits; (2) irreparable harm; (3) that the balance of hardships tips in its favor; and (4) the impact of the injunction on the public interest. *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451, 7 USPQ2d 1191, 1195 (Fed.Cir.1988). A clear showing of likely success on the merits entitles a patentee to a rebuttable presumption of irreparable harm. *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556, 31 USPQ2d 1781, 1784 (Fed.Cir.1994). While granting a preliminary injunction requires analysis of all four factors, *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 973, 41 USPQ2d 1185, 1188 (Fed.Cir.1996), a trial court may, as the court did here, deny a motion based on a patentee's failure to show any one of the four factors—especially either of the first two—without analyzing the others, *id.* at 973–74, 41 USPQ2d at 1188.

In this case, the district court's analysis turned on the first factor, reasonable likelihood of success on the merits. Because

Kopykake did not raise any validity defenses, analysis of this factor focused solely on the likelihood that Guttman would be able to show infringement. On appeal, Guttman argues that the court misconstrued the claim terms "tortuous bend"/ "non-tortuous copy path" and "photocopy machine," and that under the proper construction of those terms there is no question that it could show a reasonable likelihood of proving infringement at trial. We begin our infringement inquiry by reviewing the district court's construction of the disputed claim terms.

A

■ We turn first to the court's construction of the terms "non-tortuous copy path" and "tortuous bend." The meaning of these two claim terms, which are used to define the degree of bending that the edible sheet undergoes during its passage through the photocopy machine, depends upon the meaning of "tortuous" and "non-tortuous." This is so because the parties apparently agree that a non-tortuous copy path is a path that is free of "tortuous bends." As described above, the district court held that "[a] bend is tortuous if it significantly deforms the line preceding it." *Guttman,* slip op. at 4. As Guttman notes, the trial court did not explain the basis of this definition. The dictionary defines "tortuous" as "marked by repeated twists, bends, or turns." *Webster's Third New International Dictionary* 2414. This cannot be the proper definition of "tortuous" as used in the claims, however, because it simply makes the phrase "tortuous bend" redundant, without providing any insight into the crucial issue of how curved a bend may be before it becomes "tortuous" within the meaning of claim 11. Relying on the intrinsic evidence, Guttman asserts that a non-tortuous copy path is one that, while potentially curved, contains no curves sharp enough to sacrifice the survivability of the edible sheet.

Path 18 of Figure 1 of the '530 patent illustrates what the specification describes at column 3, line 59 as a tortuous copy path:

Path 18 follows a 180° curve, which is typical of the type of bent copy path in most commercial photocopy machines. However, while Figure 1 illustrates a bend

that falls within the definition of "tortuous," it does not answer whether other, less extreme bends might also fall within that definition.

The specification does not explicitly define tortuous (or non-tortuous). The specification, however, is not entirely silent as to what a "non-tortuous copy path" is. In column 4, the patent describes a copy path free of "any tortuous bends or significant curves," such as the 180˜ curve shown above, so as to enhance survivability of the substrate sheet. '530 Patent, col. 4, lines 29–30. Thus, the specification indicates that a non-tortuous path is one that enhances survivability of the edible sheet.

Further disclosures in the specification are consistent with the meaning espoused by Guttman. As noted above, traditional photocopy machines were thought to be incompatible with edible sheets in part because the paper is too delicate to survive passage through a copy path with extreme curves. The specification describes this problem as follows: "[M]ost edible substrate sheets are relatively flimsy sheets, and so would not likely survive a pass through the machine along the copy path. Indeed the copy path in such machines is quite tortuous making them unsuitable for photocopying onto either flimsy or rigid edible sheets." *Id.* at col. 2, lines 27–33. Thus, it is clear that a tortuous bend is one that an edible substrate sheet "would not likely survive."

The specification teaches that providing a "substantially straight" copy path is one solution to this problem:

The tortuous path is thus usually provided between the copy paper source, such as a drawer in the machine, and the reproducer mechanism in the terminal copying portion of the copy path. To

this end ... the tortuous copy path is interrupted and a substrate input is defined ... such that the edible sheet (and carrier) will traverse a substantially straight copy path so as to enhance survivability of the sheet as it passes through the machine, while also reducing the areas of the machine that could be gummed-up by the edible sheet.

*Id.* at col. 3, lines 5–16. Kopykake seizes on this language in the specification (and similar language in the prosecution history) to support its proposed claim interpretation, namely that "non-tortuous copy path" means a substantially straight copy path. However, while we agree that a substantially straight path is non-tortuous, we do not agree that the claim language should be limited to substantially straight copy paths. The inventor clearly contemplated using the invention in machines with curved, but non-tortuous, copy paths. For instance, the specification notes that putting the edible substrate sheets on a carrier sheet with tape down the side "helps protect edge 130 from snagging and is particularly advantageous for use in photocopying machines where the paper path is curved as opposed to straight." *Id.* at col. 5, lines 18–20. Furthermore, the other independent claims explicitly recite a "substantially straight copy path," suggesting that the applicant chose "non-tortuous copy path" to mean something different from, and presumably broader than, a substantially straight copy path.

Were there any doubt as to the correctness of Guttman's interpretation, the prosecution history provides an explicit definition of the contested claim language. The limitations to a "non-tortuous copy path" and lack of "tortuous bends" were added via amendment. The reason for the amendment is unclear from the record on

appeal. However, the remarks accompanying the amendment explain that

> [i]t will be understood that the term "non-tortuous," as used by Applicant, is intended to cover a copy path that may be curved, but is free from any bends that would tend to sacrifice the survivability of the substrate. For example, on Page 10, lines 8–10 of the disclosure, Applicant states that "[t]ape 132 helps protect edge 130 from snagging and is particularly advantageous for use in photocopying machines where the paper path is *curved* as opposed to straight (emphasis added)." Accordingly, Applicant clearly contemplates a curved copy path, but one that is free from tortuous bends that would tend to impair the intended properties of the edible web.

Based on this language, Guttman asserts that a "non-tortuous copy path" is simply "a path that can be curved, but which is free from bends that would tend to sacrifice the survivability of the substrate."

We see no reason to deviate from the definition espoused by the applicant during prosecution, and therefore we agree with Guttman that the correct definition of "non-tortuous copy path" is a path that, while not necessarily straight, has no curves sharp enough to sacrifice the integrity of the edible substrate sheet. By extension, a "tortuous bend" is a bend sufficiently sharp to sacrifice the integrity of the substrate sheet. We turn now to the other disputed claim term: photocopy machine.

### B

■ The district court found that Guttman was unlikely to prove that the Kwik Kopy contained the claimed "photocopy machine." Though the court did not ex-

plicitly define photocopy machine in its order denying the preliminary injunction, it is clear that the court assigned it its ordinary meaning: a standard office photocopy machine. Guttman argued to the trial court, as it does here, that the patent explicitly defines photocopy machine to include any apparatus with scanning and image reproduction (*i.e.*, printing) capabilities that operate in tandem—regardless of whether the scanner and printer equipment are housed separately.

As Kopykake notes, the preferred embodiments described in the specification are all conventional plain paper photocopy machines that conform to the district court's understanding of the "photocopy machine" claim limitation. However, after detailing the preferred embodiments, the specification explains ways in which the invention is broader than the specific embodiments illustrated in the drawings and detailed in the text; for example, the patentee states that edible toner formulae would be covered as well as the edible ink described and shown in the drawings. With respect to the photocopy machine, the patentee states:

> Similarly, while the photocopy machine is shown as an integral unit, the scanning and image reproducer aspects need not be in the same housing. As will be appreciated, a characteristic of plain paper photocopy machines is that single button operation results in scanning of an image on the copy glass and reproduction of same on the [edible] web. *Thus, where the scanning and image reproduction aspects are separate (within or without the same housing), but cooperate to produce the effect of a plain paper photocopy machine with, in essence, one button operation to scan and reproduce the image, the two aspects are*

*deemed to define a photocopy machine as that term is used herein.*

'530 Patent, col. 6, lines 39–51 (emphasis added). We agree with Guttman that the above statement explicitly defines photocopy machine to include a system with separate scanner and printing capabilities so long as the two parts function cooperatively with one-button operation to produce the effect of a plain paper photocopy machine.

■■■■ It is black letter law that a patentee can "choose to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term that could differ in scope from that which would be afforded by its ordinary meaning." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342, 60 USPQ2d 1851, 1854 (Fed. Cir.2001). "The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1577 (Fed.Cir.1996). Where, as here, the patentee has clearly defined a claim term, that definition "[u]sually . . . is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* In this case, the definition of photocopy machine provided in the specification does indeed dispose of the claim construction dispute, and it was error for the district court to overlook it.

Kopykake argues that we may affirm the district court's claim construction because the language from the specification quoted above was merely meant to ensure that the patent would capture plain paper photocopy machines that happened to place the scanning and image reproduction components in separate housings. In Kopykake's view, it was not meant to include any machine with both scanning and image reproduction capabilities that work cooperatively. We disagree. Had the patentee intended to claim only conventional plain paper photocopy machines, whether composed of a single housing or not, he would not have used the phrase "cooperate *to produce the effect of* a plain paper photocopy machine." Such a phrase indicates that the term includes an apparatus that is not a conventional "plain paper photocopy machine," but that nonetheless possesses scanning and reproduction features that work together to produce the effect of such a photocopy machine.

Kopykake also argues that the patentee expressly disclaimed systems without conventional photocopy machines during prosecution. Kopykake focuses on a statement in the prosecution history distinguishing a Patent Cooperation Treaty (PCT) application by explaining that the PCT application "is completely silent with respect to the use of a photocopy machine in a method of decorating an iced bake [sic] good." But far from disclaiming anything other than plain paper photocopy machines, this statement simply begs the question what a photocopy machine is. The PCT application, WO95/01735 to Douglas Stewart (the same inventor as for the '530 patent), discloses making edible substrate films for bakery applications, as well as a method of decorating the edible sheets with edible ink. The application discusses many different methods of depositing an image on the edible sheets, including conventional printing presses, silk-screening, and ink-jet printing. What it does not disclose, however, is a scanner combined with an inkjet printer—or any other machine that contains both scanning and reproduction capabilities working together to give the effect of one-button copying. Therefore, there was no need for the patentee to disclaim all machines other than conven-

tional photocopiers in order to distinguish the PCT application, and the claims should not be narrowed on this basis.

Because the patentee provided an explicit definition of "photocopy machine" in the specification, and because no other intrinsic evidence casts doubt on that definition, the patentee's definition controls. Thus, a photocopy machine is defined to include not only conventional plain paper photocopy machines, but also systems with separate scanner and printing capabilities so long as the two parts function cooperatively with one-button operation to produce the effect of a plain paper photocopy machine.

## III

■■■ The district court based its denial of Guttman's motion on its construction of the claim terms "photocopy machine" and "non-tortuous copy path"/"tortuous bend." As explained above, the court erred in its construction of those terms because it overlooked explicit definitions provided by the patentee in the specification and the prosecution history. Kopykake contends that we should nevertheless affirm, arguing in essence that—notwithstanding the legal error in its claim construction—the trial court acted within its discretion in denying Guttman's motion. Kopykake's argument is not without some appeal, for at the preliminary injunction stage we will not lightly intrude upon a district court's discretionary decision to issue only a tentative claim construction and to base its resolution of a preliminary injunction motion upon that tentative claim construction. *See Int'l Communication Materials, Inc. v. Ricoh Co.,* 108 F.3d 316, 318–19, 41 USPQ2d 1957, 1958 (Fed.Cir.1997) (affirming the denial of a preliminary injunction where district court only tentatively defined claim terms based on incomplete claim interpretation material presented to the court). "District judges are overburdened and need flexibility to operate efficiently. They deserve tolerance by reviewing courts so they can tailor procedures of adjudication to the case at hand." *Reebok Int'l,* 32 F.3d at 1557, 31 USPQ2d at 1784. District courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves. *Sofamor Danek Group, Inc. v. DePuy–Motech, Inc.,* 74 F.3d 1216, 1221, 37 USPQ2d 1529, 1532 (Fed.Cir.1996). This is particularly true where issues involved are complex, either due to the nature of the technology or because the meaning of the claims is unclear from the intrinsic evidence. Indeed, these difficulties may be even more acute in the preliminary injunction context than at later stages in the litigation because, as was the case here, motions for a preliminary injunction may come for decision before significant discovery has occurred. Hence, in reviewing a district court's decision on a motion for a preliminary injunction, we remain "mindful that all findings of fact and conclusions of law at the preliminary injunction stage are subject to change upon the ultimate trial on the merits." *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH,* 237 F.3d 1359, 1363, 57 USPQ2d 1647, 1649 (Fed.Cir.2001).

■■■ However, while we are sympathetic to the difficulties that may confront a district court faced with construing highly technical claim language on an expedited basis, we think that in this case, the district court did abuse its discretion in denying Guttman's motion. Our precedent

supports the proposition that grounding a decision on a preliminary injunction on a claim construction at odds with an unambiguous definition in the intrinsic evidence constitutes an abuse of discretion. In *Bell & Howell Document Management Products Co. v. Altek Systems,* which involved unambiguous intrinsic evidence of an inventor's particular definition for the claim terms, we vacated a trial court's denial of a preliminary injunction because its erroneous claim construction conflicted with the clear definition set forth in the intrinsic evidence. 132 F.3d 701, 707, 45 USPQ2d 1033, 1039 (Fed.Cir.1997). Like *Bell & Howell,* this is not a case in which the patents "suffer from the malady of ambiguous intrinsic evidence." *Id.* at 706, 45 USPQ2d at 1038. On the contrary, as discussed above, the patentee clearly defined the disputed claim terms in the prosecution history and the specification, and we could find no instance in which he used the terms in a fashion inconsistent with those definitions. Nor is this a case involving highly complex technology that required, for example, the consultation of extrinsic evidence to understand the background scientific concepts. And, while discovery had not been completed at the time the district court decided the motion for a preliminary injunction, the court had before it the intrinsic evidence necessary to decide whether the patentee had elected to be his own lexicographer and if so to understand the definitions imposed by the patentee. Furthermore, we do not confront here a situation in which the patentee failed to bring the appropriate intrinsic evidence to the attention of the trial court, or failed to argue that the intrinsic evidence should control the inquiry. Indeed, examination of the transcript of proceedings before the trial court reveals that the patentee carefully and thoroughly raised the same claim construction arguments there as here, and based those arguments upon the same intrinsic evidence before us today. We therefore hold that in the circumstances of this case, failure to construe the claim terms in accordance with the definitions set forth by the patentee in the intrinsic evidence constituted an abuse of discretion.

## IV

The only question remaining concerns the proper appellate remedy to afford Guttman. Guttman asks that we reverse the district court and remand with instructions to enter the preliminary injunction. Such a course is inappropriate, however, for several reasons. First, the trial court has not yet passed on whether, under the proper claim construction, Guttman is likely to show infringement. The resolution of this issue necessarily involves factual determinations that rest within the province of the trial court, not the appellate court.[1] Furthermore, because it denied Guttman's motion, the trial court did not complete its analysis of the four factors Guttman must prove to show

1. Kopykake urges us to affirm on the alternate ground that its Kwik Kopy device does not use an "edible web" as required by claim 11. The trial court has not yet construed this claim term, much less inquired into whether the Kwik Kopy meets this limitation as properly construed. We decline Kopykake's invitation to decide this issue for the first time on appeal, but on remand, of course, the parties can revisit whether the Kwik Kopy meets the "edible web" limitation. Indeed, the presence of this unresolved issue, which could (under Kopykake's view) determine the outcome of the infringement inquiry, demonstrates yet another reason why this case must be returned to the district court for further proceedings rather than reversed outright as Guttman requests.

entitlement to a preliminary injunction. In particular, the court did not address the second factor (irreparable harm) or the third factor (the balance of hardships). Guttman acknowledges this lack of discussion, but argues that it will be entitled to a presumption of irreparable harm. However, the presumption of irreparable harm only arises if Guttman makes a clear showing on the first factor, likelihood of success on the merits, *Reebok Int'l*, 32 F.3d at 1556, 31 USPQ2d at 1785, and this factor has not yet been evaluated under the proper claim interpretation. Thus, it remains to be seen whether Guttman can make a clear showing of likelihood of infringement under the proper claim construction. Furthermore, even assuming *arguendo* that Guttman is entitled to a presumption of irreparable harm, the presumption is rebuttable, and Kopykake must be afforded the opportunity to rebut it—an opportunity that it has not yet had. Finally, while a court determines entitlement to a preliminary injunction in light of all four of the factors discussed above, no one factor is determinative. Rather, "[t]he court must balance these factors against one another and against the extent of the relief sought." *Sofamor Danek*, 74 F.3d at 1219, 37 USPQ2d at 1531. The balancing of the four factors, of course, rests within the discretion of the trial court, not the appellate court. Although we have concluded that the trial court's error in claim construction necessitates a reevaluation of these factors, the reevaluation itself still rests within the discretion of the trial court. Thus, the appropriate remedy is not to reverse with instructions to enter the injunction, as Guttman asks, but rather to vacate the trial court's previous order and remand for further proceedings in light of this opinion.

## V

For the reasons discussed above, we conclude that the trial court abused its discretion in denying Guttman's motion for a preliminary injunction based on a construction of the claims at odds with the clear definitions provided in the intrinsic evidence. Thus, we vacate the order of the district court and remand for further proceedings.

*VACATED AND REMANDED.*