NEWSPRING INDUSTRIAL
CORPORATION, Plaintiff–
Appellant,

v.

SUN GEM PLASTICS ENTERPRISE
CO., LIMITED, and Biing Rong
Hsiu, Defendants–Appellees,

and

New Mayline Co., Inc., Mayline Enter-
prises, Inc., Jen–Hsien Liu, and
George Li, Defendants.

No. 02–1450.

United States Court of Appeals,
Federal Circuit.

DECIDED: May 1, 2003.

Before MICHEL, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and LINN, Circuit Judge.

LINN, Circuit Judge.

Newspring Industrial Corporation ("Newspring") appeals from the denial of its motion for a preliminary injunction by the United States District Court for the District of New Jersey. *Newspring Indus. Corp. v. New Mayline Co.*, No. 02–2326(WHW) (D.N.J. May 29, 2002). Because the district court did not abuse its discretion in denying Newspring's motion in view of Newspring's failure to show a reasonable likelihood of success on the merits of its claims, we *affirm*.

I

In April of 2002, Newspring became aware that several companies, including Sun Gem Plastics Enterprise Company, Limited ("Sun Gem"), were making and/or selling plastic food containers similar to Newspring's "VERSAtainer" products for use primarily by Chinese restaurants. On May 15, 2002, Newspring filed a Complaint in which it alleged patent infringement of United States Design Patent No. 439,159 and United States Patents No. 6,056,138 and No. 6,196,404; trade dress infringement under the Lanham Act, 15 U.S.C. § 1125; and unfair competition under New Jersey state law. On the same day, Newspring filed a motion under 35 U.S.C. § 283 for a preliminary injunction, a temporary restraining order, and seizure of infringing products and molds used to produce the allegedly infringing products. This application was based solely upon the claims of patent infringement.

After an ex parte hearing, the court granted a temporary restraining order and ordered seizure of both the accused products and the molds used in their production. After an interim application by the defendants to have the temporary restraining order dissolved was denied, a hearing was held on May 28, 2002 to decide whether a preliminary injunction should be granted. Prior to this hearing, Newspring sought to amend its application for preliminary injunction to encompass its original trade dress and unfair competition claims, in addition to the patent claims. The defendants objected to this change, stating that they lacked time to respond adequately to the additional issues. The hearing was held on May 28, and the court denied Newspring's application on the following day.

This court has jurisdiction over Newspring's appeal from the denial of its motion under 28 U.S.C. §§ 1292(c)(1) and 1295(a)(1). *Jack Guttman, Inc. v. Kopykake Enters. Inc.*, 302 F.3d 1352, 1356, 64 USPQ2d 1302, 1304 (Fed.Cir.2002).

## II

The grant or denial of a preliminary injunction under 35 U.S.C. § 283 is within the discretion of the district court. *Id.* We will reverse such a decision "only upon a showing that the court abused its discretion, committed an error of law, or seriously misjudged the evidence." *Id.* (quoting *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 236 F.3d 1363, 1367, 57 USPQ2d 1542, 1544–45 (Fed.Cir.2001)). A patentee applying for a preliminary injunction must show: "(1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the public interest." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350, 57 USPQ2d 1747, 1751 (Fed.Cir.2001). In its analysis, the district court focused on the first of these factors: whether Newspring had a reasonable likelihood of success on the merits of its claims.

Newspring argues that several deficiencies in the district court's analysis amount to an abuse of discretion in the denial of its motion. Specifically, Newspring argues that the district court failed to consider each of the three patents in suit separately in assessing infringement, failed to conduct a proper claim construction, compared the defendants' allegedly infringing products, not with the claims of Newspring's patents, but rather with Newspring's own commercial products, and confused the applicable legal standards for design and utility patent infringement. Newspring asserts that these failures call for a vacatur of the denial of its motion and a remand of the case for further consideration. We do not agree.

### A

██ Newspring asserts that the district court's failure to construe the claims of the utility and design patents at issue was erroneous. Determining the proper scope of the claims of a patent by construing the language of those claims is, of course, the first step in an infringement analysis. *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286, 63 USPQ2d 1545, 1550–51 (Fed.Cir.2002) ("As with utility patents, determining whether a design patent is infringed is a two-step process. First, the court must construe the design patent's claim."); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454, 46 USPQ2d 1169, 1172 (Fed.Cir.1998) (en banc). However, in the context of a preliminary injunction request, we "will not lightly intrude upon a district court's discretionary decision to issue only a tenta-

tive claim construction and to base its resolution of a preliminary injunction motion upon that tentative claim construction." *Jack Guttman,* 302 F.3d at 1361, 64 USPQ2d at 1308. It is apparent that the district court conducted at least such a tentative construction of the utility patent claims. In citing the basis for its ruling, the district court interpreted those claims as follows:

> The container has a lid and a base which form a series of three self-reinforcing seals when mated. A protrusion on the lid is reinforcing the triple seal formed between the lid and base. The protrusion upon the force of the base locks the lid and base together. The third seal has the largest surface area and acts as the first line of defense against food leakage out of the container, and the last line of defense against the entry of contaminants into the container.

Hearing Tr. at 35.

Although the court did not construe the single claim of the '159 design patent in a similar manner, this is of less moment. That claim, like most design claims, is narrow in scope and limited to the figures of the patent: "The ornamental design for a rectangular stackable container including triple sealed rim, as shown and described." '159 patent, col. 2, ll. 7–8. *See In re Mann,* 861 F.2d 1581, 1582, 8 USPQ2d 2030, 2031 (Fed.Cir.1988) ("Design patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings."). We find no error of law in the district court's preliminary claim construction.

## B

■ Newspring next alleges that the district court erred in comparing the allegedly infringing products, not to the claims of its patents, but rather to Newspring's own commercial product, the VERSAtainer. Newspring directs our attention to the court's request during the hearing for the VERSAtainer: "Show me. No, show me in the product. Because I have already looked at your claim but I want to see it in real life. Show me your seals in the product." Hearing Tr. at 16. However, the fact that the district court made reference to Newspring's own product during the hearing is insufficient to show that the court erred by failing to consider the terms of the patent claims. The patents were in evidence, and we must presume that the district court considered those patents in reaching its conclusion, particularly when the district court stated explicitly that "I have already looked at your claim." *Id.; see, e.g., Western Pac. Fisheries, Inc. v. SS President Grant,* 730 F.2d 1280, 1285 (9th Cir.1984) ("We presume that the judge considers all of the evidence."). Newspring provides no evidence that the court ignored the patents in suit. In fact, during the hearing, the court specifically stated that it had not only looked at but also carefully considered the claims of the patents: "We got through all the arcane language of the patent. That's how we figured it out, my clerks and I. We went through and actually went through all of this." Hearing Tr. at 14. Moreover, in denying Newspring's motion from the bench, the court stated that it had "look[ed] at the diagrams of the plaintiffs patented product." Hearing Tr. at 34. A simple request to inspect a patentee's commercial product during a motion hearing– for whatever additional understanding that inspection might provide–is insufficient to show legal error, particularly where the record indicates that the court gave careful consideration to the patent claims.

## C

■ Newspring further alleges that the district court applied an incorrect legal

standard for design patent infringement. In making such an infringement determination, the comparison of the claims of the design patent to the accused product embraces two distinct tests, both of which must be satisfied to make out infringement: the "ordinary observer" test, and the "point of novelty" test. *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377, 62 USPQ2d 1065, 1067 (Fed. Cir.2002). The focus of the "ordinary observer" test is whether "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same." *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871). The district court found that this "ordinary observer" test was not satisfied, and based its denial of Newspring's motion on that determination.

Newspring alleges that the court employed a stricter standard than is called for in the "ordinary observer" test. It points to the court's statement that "it may be that I'm more microscopically anally fixated than others." Hearing Tr. at 7. However, this remark was made during a colloquy between the court and Newspring's attorney, and no such remark appears at that portion of the transcript in which the court announces the bases for its decision. This off-the-cuff remark is insufficient to establish that the court abused its discretion and does not suggest, much less support, the proposition that the district court employed an erroneous test.

### D

■ Newspring argues next that the district court seriously misjudged the evidence, *Jack Guttman*, 302 F.3d at 1356, 64 USPQ2d at 1304, in concluding that Newspring had not shown it had a reasonable likelihood of success on the merits of its patent infringement claims. During the motion hearing, the court set forth its grounds for this conclusion with respect to the utility patents as follows:

> Then we turn to the allegation that the three edges have been infringed. The three edges to seal the product have been sealed, have been used as sealing efforts in the plaintiff's product. It appears to me that the edges, as I asked counsel for the plaintiff, although there are three in number, at least three in number with regard to each, but with regard to the offending product there are four edges, and the edges in my determination at this point are not identical nor are they so similar as for me to claim that there is infringement.

Hearing Tr. at 37. Newspring's counsel asserted at oral argument that the district court based its finding of no reasonable likelihood of success on the merits of utility patent infringement simply on the presence of this additional seal, and that the presence of an additional element in the accused product would not avoid a finding of infringement if that product contained other elements corresponding to all the limitations of the asserted claim. This latter comment is of course a correct legal proposition. But we believe that the district court, in referring to the fourth edge, was simply referring to the fact that the ridge present in the accused containers effectively divided the interior seal into two seals, thereby reducing its surface area, so that it was no longer reasonably likely to meet the literal language of the claims. In addition, in concluding that Newspring had not carried its burden on the merits of design patent infringement, the district court relied on the presence of an additional plane in the patented container, as well as the difference in the size of the circles found in the lid of the patented container and the allegedly infringing containers. The court concluded that "it does not seem to me at this point that one

would be misled or confused or consider that these two are substantially identical." Hearing Tr. at 36. In short, the district court set forth specific findings supporting its determination, and we are not prepared to say, on this record and in the context of preliminary injunction proceedings, that the district court misjudged the evidence or otherwise abused its discretion in failing to find a likelihood of infringement of the asserted patents.

## E

Lastly, with respect to the trade dress and unfair competition claims, Newspring asserts that the district court failed entirely to consider these claims. It is true that the district court made no explicit findings on either the trade dress or unfair competition claims. However, Newspring appears to have done no more than make broad allegations of trade dress and unfair competition violations in its complaint, and these issues were not discussed at the preliminary injunction hearing. We presume, as we must, that the district court thoroughly considered the evidence before it and determined that Newspring had not shown a substantial likelihood of success on the merits of either claim. We decline to hold that the court abused its discretion in denying a preliminary injunction motion based on claims supported by no more than naked allegations.

## CONCLUSION

The district court did not abuse its discretion, commit an error of law, or seriously misjudge the evidence in concluding that Newspring failed to show a reasonable likelihood of success on the merits of its claims and in denying Newspring's motion for a preliminary injunction. We therefore affirm.