**SYMBOL TECHNOLOGIES, INC, Plaintiff,**

v.

**JANAM TECHNOLOGIES LLC, Defendant.**

**Civil Action No. 08–340–JJF.**

United States District Court, D. Delaware.

March 31, 2009.

Arlene L. Chow, Esquire and Eric J. Lobenfeld, Esquire of Hogan & Hartson, New York, NY, Richard L. Horwitz, Esquire and David Ellis Moore, Esquire of Potter Anderson & Corroon LLP, Wilmington, DE, for Plaintiff.

Richard L. DeLucia, Esquire and John R. Kenny, Esquire of Kenyon & Kenyon, LLP, New York, NY, Steven J. Balick, Esquire; John G. Day, Esquire and Lauren E. Maguire, Esquire of Ashby & Geddes, Wilmington, DE, for Defendant.

## *MEMORANDUM OPINION*

FARNAN, District Judge.

Pending before the Court is Defendant's Objections (D.I. 150) to the Magistrate Judge's Report and Recommendations (D.I. 133). For the reasons discussed, the Report and Recommendations will be adopted in part and overruled in part.

## I. BACKGROUND

On June 9, 2008, Plaintiff Symbol Technologies, Inc. ("Plaintiff") filed this patent infringement case, alleging infringement of U.S. Patent Nos. 5,334,821 ("the '821 patent"), 5,835,366 ("the '366 patent"), and 6,714,969 ("the '969 patent") by Defendant Janam Technologies LLC ("Defendant"). On June 18, 2008, Plaintiff filed a Motion for Preliminary Injunction. (D.I. 6.) The Court referred this matter to Magistrate Judge Stark for a report and recommendation regarding tentative constructions of disputed patent claim terms in relation to the Motion. (D.I. 122.)

■■■ The parties filed a Joint Claim Chart identifying the claim terms in dispute. (D.I. 68.) The parties briefed their positions on claim construction, and the Magistrate Judge conducted a Markman hearing on October 30, 2008. (*See* D.I. 120 (October 30, 2008 Hearing Transcript).) The parties were able to agree that most of the terms of the claims at issue did not need construction.[1] On December 1, 2008, 2008 WL 5070462, the Magistrate Judge issued his Report and Recommendations construing the remaining disputed claim terms. (D.I. 133.) The Magistrate Judge recommended the following tentative constructions: [2]

1. The term "a portable point of sale terminal" as used in Claim 9 of the '821 patent means "a portable computer terminal that is capable of handling a sales transaction."

2. The term "electromagnetic transceiver" as used in Claim 9 of the

---

1. Several of the formerly disputed claim terms are no longer in dispute. Following the Markman hearing, the parties reached agreement with respect to construction of three claim terms in the '821 patent. (D.I. 112) Specifically, the parties agreed that: (i) "data" is to be construed as "information associated with a sales transaction;" (ii) "remote input-output device" is to be construed as "a remote device through which information associated with a sales transaction is input or output;" and (iii) "host computer" is to be construed as "a remotely located computer which provides information associated with a sales transaction to the portable point of sale terminal and possesses information associated with a sales transaction from the portable point of sale terminal." The Magistrate Judge recommended that these agreed-upon constructions be adopted for purposes of resolving the Motion. (D.I. 133 at 2, n. 2.)

2. In deciding a motion for preliminary injunction in a patent infringement case, a court may issue tentative claim constructions and may base its resolution of the preliminary injunction upon those tentative constructions. *See Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed.Cir.2002). "[A]ll findings of fact and conclusions of law at the preliminary injunction stage are subject to change upon the ultimate trial on the merits." *Id.* (quotations omitted).

'821 patent means "electromagnetic transceiver."

3. The term "power" as used in Claim 7 of the '366 patent means "voltage."

4. The term "without installing new software on the wireless terminal" as used in Claims 22 and 25 of the '969 patent means "without installing an application program, other than the parsing software, to provide user interfaces."

Defendant filed objections to the Magistrate Judge's preliminary construction of three claims terms: "a portable point of sale terminal," "power," and "without installing new software on the wireless terminal." (D.I. 150.) Defendant contends that different preliminary construction should be adopted by the Court for purposes of deciding Plaintiff's Motion for Preliminary Injunction. Neither party objects to the Magistrate Judge's recommended construction of "electromagnetic transceiver."

## II. DISCUSSION

### A. The '821 Patent—"A Portable Point of Sale Terminal"

■ After considering the parties' proposed constructions, the Magistrate Judge recommended that the term "a portable point of sale terminal," as used in Claim 9 of the '821 patent, should be construed to mean "a portable computer terminal that is capable of handling a sales transaction." (D.I. 133 at 7–11.) For the reasons set forth in the Report and Recommendations, the Court will adopt this construction.

### B. The '366 Patent—"Power"

■ After considering the parties' proposed constructions, the Magistrate Judge recommended that the term "power," as used in Claim 7 of the '366 patent, should be construed to mean "voltage." (D.I. 133

at 13–15.) For the reasons set forth below, the Court will overrule the recommended construction and will adopt Defendant's proposed construction. Specifically, for purposes of the Motion for Preliminary Injunction, the Court will construe the term "power" to mean "the rate at which energy is transferred, calculated by multiplying electric current times voltage."

Claim 7 of the '366 patent recites, in part:

7. A method for facilitating power shutdown protocol of a computing device, comprising the steps of:

using a first cell as a primary portable power supply . . .

using a secondary cell as a backup portable power supply . . . and

using a boost circuit to increase the *power* of the secondary cell . . .

wherein the secondary cell supplies power to the computing device upon a voltage of the first cell dropping below a predetermined value.

'366 patent at col. 11, ll. 42–53 (emphasis added).

With respect to Claim 7, the dispute between the parties primarily centers around whether "power" should be interpreted according to its ordinary, "textbook" definition or whether it should be interpreted according to a "colloquial" definition, proposed by Plaintiff. It is undisputed that, among those of ordinary skill in the art, the well-established, textbook definition of "power" is "voltage multiplied by current." (D.I. 133 at 14–15.) Plaintiff contends, however, that "power" also has a second, colloquial definition, which is simply "voltage." (D.I. 171 at 6.) This colloquial definition is contrary to the textbook definition, because it does not account for current. More precisely, the colloquial definition assumes that current is constant.

Plaintiff contends that a person of ordinary skill in the art, upon reading the specification of the '366 patent, would understand that the patent embraces the colloquial definition of "power." Specifically, Plaintiff contends that: 1) the specification does not explicitly adopt the textbook definition of "power;" 2) the specification uses the terms "power" and "voltage" loosely and interchangeably when referring to the output of a battery; and 3) the preferred embodiment described in the specification describes boosting the power of a secondary battery only by boosting its voltage, thus implying that current is constant.

■ For a claim term to be construed contrary to its ordinary meaning, "a patentee must clearly express that intent in the written description." *Helmsderfer v. Bobrick Washroom Equipment, Inc.,* 527 F.3d 1379, 1381–82 (Fed.Cir.2008). Although Plaintiff correctly notes that the specification does not explicitly adopt the textbook definition of "power," the intrinsic record also does not clearly reject this textbook definition. Rather, "[e]ven [Plaintiff's] expert admitted that portions of the specification of the '366 Patent use 'power' in its classic sense of 'voltage times current.'" (D.I. 133 at 15 (citing D.I. 79, Exh. C at 25).)

■ The Court also does not agree with Plaintiff's contention that the patent uses the terms "power" and "voltage" loosely and interchangeably. The specification consistently uses "power" in the context of a "power supply" or "output power."[3] Importantly, the patent does not quantify "power" according to volts, the scientific unit for voltage. Measurements in volts in the patent appear in the context of "voltage."[4] At one point, the specification describes "a 5 volt power supply circuit and a 3 volt power supply circuit," but the same paragraph then clarifies that these circuits provide "a steady 5 volt *DC [ (direct current) ]* power" and "a steady 3 volt *DC* power." '366 patent at col. 7, ll. 19–34 (emphasis added). Thus, even where the specification uses volts in connection with a "power supply circuit," it describes the circuit's power output as a combination of both voltage and current. Additionally, the specification provides an example of a circuit for boosting "power output." *Id.* at col. 7, ll. 41–55. This circuit "produces an electro-magnetic field *current* (EMF) at a desired *voltage* level." *Id.* (emphasis added). This again fits the textbook definition of "power," which includes both voltage and current. Thus, the usage of "power" and "voltage" throughout the patent supports the conclusion that the patentees intended these terms to have different, though related, meanings.

■■ Finally, the Court is not persuaded by Plaintiff's argument that the preferred embodiment, which describes increasing the power of a secondary cell only by increasing its voltage, should limit the interpretation of a circuit for increasing "power" in the claims. The preferred embodiment is an illustrative example, and "when claim language is broader than the preferred embodiment, it is well-settled that claims are not to be confined to that

---

3. *See, e.g.,* '366 patent at col. 2, ll. 5–20, 29, 37, 39, 55, 59; col. 9, ll. 14, 38–41; col. 10, ll. 2, 30–31 ("power supply," "power supply circuit," or "supplying power"); *id.* at col. 2, ll. 40, 62; col. 7, l. 44; col. 9, ll. 39–40; col. 10, ll. 13, 22, 31–32, 57–65 ("output power" or "power output").

4. *See, e.g., id.* at col. 7, l. 40 ("voltage of approximately 3.6 volts"); col. 7, l. 54 ("voltage level (e.g., approximately 5.2 volts)"); col. 9, l. 37 ("voltage level of approximately 7.2 volts"); col. 10, ll. 8–9 ("voltage … falling below 5.4 volts"); col. 10, ll. 18–19 ("e.g., 5.2 volts; a voltage level"); col. 10, l. 39 ("voltage of 3.6 volts").

embodiment." *DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1348 (Fed.Cir. 2008); *see also Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 807 (Fed.Cir.2007) ("[In their claims, patentees] could have used the word 'perpendicular,' as they did in discussing their preferred embodiment. Instead, they chose a different term that implies a broader scope.") Moreover, the term "voltage" appears later in the same claim, indicating that the patentees intended the term "power" to have a meaning other than simply "voltage." *See Helmsderfer*, 527 F.3d at 1381–82 ("different claim terms are presumed to have different meanings").

Accordingly, the Court will overrule the recommended construction and will adopt Defendant's proposed construction. Specifically, for purposes of the Motion for Preliminary Injunction, the Court will construe the term "power" to mean "the rate at which energy is transferred, calculated by multiplying electric current times voltage."

## C. The '969 Patent—"Without Installing New Software on the Wireless Terminal"

■ After considering the parties' proposed constructions, the Magistrate Judge recommended that the term "without installing new software on the wireless terminal," as used in Claim 16 of the '969 patent, should be construed to mean "without installing an application program, other than the parsing software, to provide user interfaces." (D.I. 133 at 15–18.) For the reasons set forth in the Report and Recommendations, the Court will adopt this construction.

## III. CONCLUSION

For the reasons discussed, the Court will adopt in part and overrule in part the Magistrate Judge's Report and Recom-

mendations (D.I. 133) tentatively construing the disputed terms and/or phrases of the '821, '366, and '969 patents for purposes of deciding Plaintiff's Motion for Preliminary Injunction. An appropriate Order will be entered.

### *ORDER*

At Wilmington, this 31 day of March 2009, for the reasons discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that the Magistrate Judge's Report and Recommendations (D.I. 133) is *ADOPTED–IN–PART* and *OVERRULED–IN–PART.* For purposes of deciding Plaintiff's Motion for Preliminary Injunction (D.I. 6), the following terms and/or phrases in United States Patent Nos. 5,334,821 ("the '821 patent"), 5,835,366 ("the '366 patent"), and 6,714,969 ("the '969 patent") are tentatively assigned the following meanings:

1. The term **"a portable point of sale terminal"** as used in Claim 9 of the '821 patent means "a portable computer terminal that is capable of handling a sales transaction."

2. The term **"electromagnetic transceiver"** as used in Claim 9 of the '821 patent means "electromagnetic transceiver."

3. The term **"power"** as used in Claim 7 of the '366 patent means "the rate at which energy is transferred, calculated by multiplying electric current times voltage."

4. The term **"without installing new software on the wireless terminal"** as used in Claims 22 and 25 of the '969 patent means "without installing an application program, other than the parsing software, to provide user interfaces."

5. The term **"data"** as used in Claim 9 of the '821 patent means "informa-

**624**

tion associated with a sales transaction."

6.  The term **"remote input-output device"** as used in Claim 9 of the '821 patent means "a remote device through which information associated with a sales transaction is input or output."

7.  The term **"host computer"** as used in Claim 9 of the '821 patent means "a remotely located computer which provides information associated with a sales transaction to the portable point of sale terminal and possesses information associated with a sales transaction from the portable point of sale terminal."