**NETWORK COMMERCE, INC.,**
a Washington corporation,
Plaintiff,

v.

**MICROSOFT CORPORATION,**
a Washington corporation,
Defendant.

No. C01–1991P.

United States District Court,
W.D. Washington.

March 10, 2003.

Ramsey M. Al–Salam, Perkins Coie, Seattle, WA, for Network Commerce Inc., a Washington corporation.

Mark Steven Parris, Heller, Ehrman, White & McAuliffe, Seattle, WA, J. Christopher Carraway, Joseph T. Jakubek, Klarquist, Sparkman, Campbell, Leigh & Whinston, LLP, Portland, OR, Stephen P. McGrath, Microsoft Corp., Redmond, WA, for Microsoft Corp., a Washington corporation.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NON–INFRINGEMENT

PECHMAN, District Judge.

This matter comes before the Court on Defendant Microsoft Corporation's ("Microsoft") Motion for summary judgment of non-infringement of U.S. Patent No. 6,073,124 (the "'124 patent"). (Dkt. No. 50) Plaintiff Network Commerce, Inc. ("NCI") is the owner of the '124 patent, which discloses and claims methods and systems for conducting electronic commerce, including a method that uses separate servers and a download component to coordinate the download of information for on-line transactions. Compl. at 2. NCI complains that Microsoft's Windows Media® system infringes the '124 patent. This Court construed the disputed claims of the '124 patent after hearing oral argument from the parties at the *Markman* hearing. Now, Microsoft moves for summary judgment of non-infringement under Fed.R.Civ.P. 56. NCI requests a Rule 56(f) continuance to pursue further discovery.

The Court, having received and reviewed the pleadings and materials, including all exhibits and declarations attached thereto, and having heard oral argument, rules that, as a matter of law, no jury could find that Microsoft's Windows Media® system infringes the '124 patent. Therefore, this Court GRANTS Microsoft's Motion for summary judgment of non-infringement. NCI's request for a continuance is DENIED.

## I. Background: The '124 Patent

The patent discloses systems and methods in e-commerce related to the purchase, license, and download of products on-line. The claims contemplate systems where the store computer, the supplier computer, and the licensing computer are separate computers, separate web servers, or separate websites. The independent claims are reproduced below.

What is claimed is:

1. A computer system for conducting electronic commerce, including:

a store computer that receives requests for electronic data from a client computer and that, in response to receiving the request, sends to the client computer a download component that coordinates the download of the electronic data;

a supplier computer that receives a request from the download component of the client computer to download the electronic data and that, in response to

receiving the request, sends the electronic data and a licensing component to the client computer, the licensing component for coordinating the licensing of the electronic data; and

a licensing computer that receives a request from the licensing component of the client computer to license electronic data and that, in response to receiving the request, determines whether access to the electronic data is to be allowed at the client computer, and when access is allowed, sends a notification that access is allowed to the client computer.

7. A method in a computer system for conducting electronic commerce, including:

requesting a first web server to order electronic data;

receiving in response to the request a download component for coordinating the download of the electronic data; and

under control of the download component, downloading from a second web server the electronic data.

11. A method in a store computer for coordinating electronic commerce, the method including:

receiving from a client computer a request to purchase electronic data; and

in response to receiving the request, sending to the client computer a download component, the download component for coordinating the download of the electronic data from a supplier computer to the client computer, the supplier computer for downloading to the client computer the electronic data when requested by the download component.

14. A first computer for coordinating electronic commerce, including:

means for receiving from a second computer a request to purchase electronic data; and

means for, in response to receiving the request, sending to the second computer a download component, the download component for coordinating the download of the electronic data from a third computer to the second computer, the third computer for downloading to the second computer the electronic data when requested by the download component.

The '124 patent.

## II. Relevant Legal Principles

### A. Summary Judgment Standard

Summary judgment is proper where the pleadings and supporting material "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). All reasonable factual differences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In response to the supported motion, the adverse party may not rest on its mere allegations or denials, but must instead "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). However, not every disputed fact will preclude summary judgment. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

■ As a general rule, infringement is a question of fact. *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed.Cir.1998). However, the court may grant summary judgment if, after drawing all reasonable inferences in favor of the patentee, the court concludes that no reasonable jury could find infringement. *Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,*

520 U.S. 17, 39 n. 8, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Therefore, this Court must apply the relevant legal principles for infringement.

### B. Relevant Legal Principles for Infringement

■ Determining whether an accused device literally infringes a patent claim requires a two-step analysis. *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG,* 224 F.3d 1308, 1316 (Fed.Cir.2000). First, the claims are construed to determine the scope of the claims. *Id.* Claim construction is a question of law. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir. 1995), *aff'd,* 517 U.S. 370, 372, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Second, the construed claims are compared to the accused device. *Id.* This second step is a factual inquiry. *Bai,* 160 F.3d at 1353. Unless the accused device meets each of the limitations in the claim, either literally or by equivalents, there is no infringement. *K–2 Corp. v. Salomon S.A.,* 191 F.3d 1356, 1362 (Fed.Cir.1999). There can be no literal infringement of a claim where even one limitation is not present in the accused device. *Strattec Sec. Corp. v. Gen. Auto. Specialty Co.,* 126 F.3d 1411, 1418 (Fed. Cir.1997).

■ Even though an accused device may not literally infringe, it may nonetheless infringe under the equitable doctrine of equivalents. *Uniroyal, Inc. v. Rudkin–Wiley Corp.,* 837 F.2d 1044, 1057 (Fed.Cir. 1988). The scope of a patent is not limited to its literal terms, but instead embraces all equivalents to claims described. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 535 U.S. 722, 122 S.Ct. 1831, 1837, 152 L.Ed.2d 944 (2002). Under the doctrine of equivalents, an accused device infringes if it performs substantially the same function, in substantially the same way, to achieve substantially the same result as the patented invention. *Warner–Jenkinson,* 520 U.S. at 39–40, 117 S.Ct. 1040.

There is no dispute over relevant facts regarding the Windows Media® system. NCI attempts to create the appearance of a dispute by rearguing the terms from the claim construction, specifically what the Court intended by "executable file or program." This does not create a factual dispute. Because the relevant aspects of the Windows Media® system are undisputed in this case, the question of whether Microsoft's Windows Media® system literally infringes the asserted claims of the '124 patent turns on the interpretation of those claims. *See K–2 Corp.,* 191 F.3d at 1362, *citing Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1578 (Fed.Cir.1996) ("Where, as here, the parties do not dispute any relevant facts regarding the accused product but disagree over [claim interpretation], the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment.").

### III. Analysis

#### A. Literal Infringement

NCI alleges literal infringement of the '124 patent based on two claim limitations: the "download component" and the "licensing component." Under the download component claim limitation, NCI originally asserted that Microsoft's metafiles are download components. NCI has developed a second theory that the Windows Media® Player is also a download component. Further, NCI asserts that the Windows Media® system contains a licensing component. Because at least one claim limitation is absent in each claim asserted against the Windows Media® system, NCI's literal infringement allegations fail.

### 1. Download Component

#### a. Metafiles

■ Microsoft's metafiles are not executable files or programs. Therefore, they are not download components, and thus the Windows Media® system does not literally infringe the '124 patent. The Court construed "download component" to require an executable file or program. Claim Constr. at 7. *Actions* are taken by the download component, as the component "coordinates" or "controls" the download of information, and also makes "requests" for electronic content from a source computer. Id. The Court used "executable," in light of the claim language and specification, to mean that the active functions in the claims were carried out by the download component, *not* some other component. Id. at 8.

It is uncontested that Microsoft's metafiles are text-based files that contain information, and *on their own* are neither able to coordinate or control the download of information, nor request electronic content from a source computer. Without the download component, the metafiles are inert, incapable of fulfilling the requirements of the claimed invention. Therefore, Microsoft's metafiles are not executable files or programs, they do not satisfy the download component claim limitation, and hence the Windows Media® system does not literally infringe the '124 patent.

#### b. Windows Media® Player

■ Next, NCI asserts that the Windows Media® Player itself is a "download component." NCI claims that "Microsoft specifically instructs its customers how to have Windows Media® Player downloaded to an end user's computer." Opp'n at 11. However, NCI bears the burden of setting forth specific facts showing that there is a genuine issue for trial, not just asserting mere allegations. Fed.R.Civ.P. 56(e).

NCI has not set forth specific facts showing that the Windows Media® Player is used as a download component. Specifically, NCI has not shown that the Windows Media® Player is downloaded onto a client computer in response to a request for electronic content, or that once installed the Windows Media® Player makes a request on its own for that content. In fact, NCI requests further discovery in order to provide facts to show that Microsoft or its customers implement Windows Media® in a manner that allows the Player itself to be downloaded to an end user's computer in response to a request for electronic data. Opp'n at 22. This secondary theory appears to have arisen after the complaint was filed, and after the deposition of Mr. Knowlton of Microsoft. Al–Salam Decl., Ex. 4. Therefore, because NCI has not met its burden of setting forth specific facts showing that the Windows Media® Player is used as a download component, the Windows Media® system does not infringe the '124 patent.

### 2. Licensing Component

■ The Windows Media® system does not have a licensing component as contemplated by the '124 patent. NCI claims that if it were given more time to conduct discovery, it could confirm that "Windows Media® systems are implemented whereby content is delivered with the 'licensing component' claimed in the patent." Opp'n at 12. Because NCI has had sufficient time to perform discovery, and because it does not allege facts sufficient to create a genuine issue of material fact, its contentions fail. Therefore, absent the licensing component limitation, there is no literal infringement of those claims of the '124 patent that require a licensing component.

Microsoft's Motion for summary judgment as to literal infringement is GRANTED.

## B. Infringement by Equivalents

 Even though an accused device may not literally infringe, it may nonetheless infringe under the equitable doctrine of equivalents. *Uniroyal,* 837 F.2d at 1057. While the doctrine of equivalents does work to encompass equivalents that are not literally claimed within the patent, the doctrine is not unbounded. *K–2,* 191 F.3d at 1366–67. There are limitations, and the limitations are questions of law. *Id.* at 1367, *citing Warner–Jenkinson,* 520 U.S. at 39 n. 8, 117 S.Ct. 1040. One of these legal limitations is preclusion of applying the doctrine of equivalents where that application would vitiate a claim element. *Id.* at 1367.

As provided by the Supreme Court, "if a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further material issue for the jury to decide." *Warner–Jenkinson,* 520 U.S. at 39 n. 8, 117 S.Ct. 1040. As already established, Microsoft's metafiles are not executable files or programs. Including a metafile as an equivalent to the download component would eliminate the requirement that a download component include an executable file or program. Therefore, NCI cannot assert that Microsoft's metafiles infringe as an equivalent to a download component. Because this limitation precludes the application of the doctrine of equivalents, this Court does not need to reach the issue of whether the metafiles are substantially similar to the download component.

Microsoft's Motion for summary judgment as to infringement by equivalents is GRANTED.

## C. Continuance pursuant to Fed. R.Civ.P. 56(f)

 The denial of a Rule 56(f) continuance is "generally disfavored" where the party opposing summary judgment makes "(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.,* 784 F.2d 1472, 1475 (9th Cir.1986). However, "the mere hope that further evidence may develop prior to trial is an insufficient basis for a continuance under Fed.R.Civ.P. 56(f)." *Continental Mar. of San Francisco, Inc. v. Pacific Coast Metal Trades District Council,* 817 F.2d 1391, 1395 (9th Cir.1987). Further, the court is within its discretion to deny a Rule 56(f) request where the moving party has failed to diligently pursue discovery. *See Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 921 (9th Cir.1996). Just because NCI thinks evidence that supports its assertions *may* exist, that alone is not a basis to grant it a continuance under Rule 56(f).

 NCI's request is denied. NCI brought this suit against Microsoft on December 6, 2001. NCI has had over a year to conduct discovery, eleven months of which was prior to its filing for bankruptcy on November 1, 2002. Further, NCI did not request this continuance at the time it was served with this Motion on November 22, 2002, but rather waited until filing its Opposition on February 3, 2003. While it is true that the cut off for discovery is May, two months from now, NCI has had substantially longer to marshal evidence to support its allegations. Taken together, NCI has not met its burden.

NCI's request for a continuance pursuant to Fed.R.Civ.P. 56(f) is DENIED.

## IV. Conclusion

The download component element of the claim language requires an executable file or program. Microsoft's metafiles are not executable files or programs. Hence, as a matter of law, no jury could find that

Microsoft's Windows Media® system infringes the '124 patent, either literally or by equivalents. Further, NCI has neither alleged specific facts to show that the Windows Media® Player is a download component as contemplated in the '124 patent, nor that the Windows Media® system contains a licensing component as contemplated in the '124 patent. Therefore, this Court GRANTS Microsoft's Motion for summary judgment of non-infringement. NCI's request for a continuance pursuant to Rule 56(f) is DENIED.