MOORE, Circuit Judge,
dissenting.
I agree with the majority’s holding in all respects save one. I write separately to voice my disagreement with the majority’s holding that the district court properly construed “transverse holes” in claim 1 of the '444 patent to mean “holes across the butt portion of the nail.” Because the majority concludes that the district court’s claim construction was proper, it affirms the court’s finding of literal infringement. From that decision, I respectfully dissent.
At the outset, I note that I am troubled by the district court’s clear reliance on a common English language dictionary, which was published ten years after the '444 patent issued to construe the term “transverse holes.” During the claim construction hearing, the court explained that the dictionary would be “an aid to our work.” The court not only used the dictionary as an “aid,” but actually utilized the dictionary definitions as the starting point when defining each of the disputed claim terms.[1] Moreover, the court seemed to disregard the briefs in favor of off-the-cuff attorney argument during claim construction. In fact, when Stryker argued that Acumed’s attorneys were changing their claim construction during the course of the hearing, the district court responded: “Let’s not worry about changing. I’m going to keep you all focused right on the task at hand. I don’t care what happened before today. I care what’s going on here.” After hearing arguments from the parties regarding the disputed claim terms and on the appropriateness of the dictionary definitions, the district court resolved each issue orally during the hearing. One week later, the court issued a one-page formal Order on Claim Construction that simply reiterated the court’s oral rulings. Acumed LLC v. Stryker Corp., No. 04-cv-513-br (D.Or. Oct. 14, 2004).
While I acknowledge that there are not formal requirements for a district court’s methodologies when conducting claim construction hearings and issuing related orders, I raise this concern because I believe the district court’s methodology led it astray from determining the “the meaning that the term [“transverse holes”] would have to a person of ordinary skill in the art ... in the context of the entire patent, including the specification.” Phillips v. AWH Corp., 415 F.Sd 1303, 1313 (Fed.Cir.2005) (en banc). When one properly begins this claim construction inquiry with the intrinsic evidence, rather than dictionary definitions, it is evident that the district court’s construction of “transverse holes” is in error.
With respect to the claim term “transverse holes,” the district court utilized the *813 dictionary to first determine that a “hole” is “an opening through something.” The district court then referred to the dictionary and found two definitions for the term “transverse”: “(1) acting, lying, or being across: set crosswise; (2) made at right angles to the anterior-posterior axis of the body.” The district court concluded that we should construe the claim term in accordance with the broader of the two dictionary definitions[2] because there is no express disavowal of claim scope in the specification. This approach was specifically rejected by this court sitting en bane in Phillips, 415 F.3d at 1320, and we have continued to reject this approach to claim construction. See On Demand Mach. Corp. v. Ingram Indus., Inc., 442 F.3d 1331, 1340 (Fed.Cir.2006).
In accordance with Phillips, the interpretive inquiry should begin not with a dictionary definition, but with the patent itself, to ascertain what an ordinarily skilled artisan reading the patent would understand the claim term to mean. Phillips, 415 F.3d at 1321. The intrinsic evidence provides no support for the broader of the two dictionary definitions set forth above (i.e., that “transverse” means “acting, lying, or being across; set crosswise”), but fully supports the narrower definition (i.e., that “transverse” means “made at right angles to the anterior-posterior axis of the body”). Each of the eight transverse holes described in the specification are specifically described as being perpendicular. Id. at col.2 11.57-59 (describing “a plurality of transverse holes, each of which is defined on a respective axis intersecting the nail axis 22, and perpendicular to the portion of the nail axis at the butt portion 14 of the nail”); col.3 11.1-3 (“transverse hole 44a is oriented ... perpendicular to the nail axis 22”); col.3 11.9-11 (“the distal holes are ... perpendicular to the butt end portion of the nail axis”) (emphases added). The majority suggests that the use of both words “implies a difference between the words ‘perpendicular’ and ‘transverse.’ ” Maj. Op. at 807. The majority contends that if transverse was meant to be construed as perpendicular, “the patentee would not have needed to clarify that these holes, in addition to being transverse, were perpendicular to the nail axis.” Id. I disagree. First, the pat-entee used the two words to clearly specify which of the definitions of transverse applied to his invention; the purpose of using the word “perpendicular” was to further describe what the inventor meant by the term “transverse,” not to distinguish it as the majority suggests. Second, to say that something is perpendicular also requires mention of a reference plane or line to which the object is located at a right angle. Here, the patent specification limits the discussion of “transverse holes” to holes having an axis perpendicular with respect to the nail axis at the butt portion. '444 patent, col.2 11.56-59. That was the point of using the word perpendicular in the specification. Thus, by utilizing the word “transverse,” the patentee did not need to repeat in the claim that each hole was perpendicular to the nail axis at the butt portion.
The specification describes “three sets of transverse holes.” Id. at col.2 1.62. With reference to Figures 1 and 2 of the patent, reproduced below, the first set includes four proximal transverse holes (44a-44d), the second set is one intermediate transverse hole (46), and the third set includes three distal transverse holes (48a-48c). *814 Each of these eight holes is then described and shown in the accompanying figures as being perpendicular to the nail axis 22. Id. at col.2 1.56-col.3 1.11. Most importantly, the specification states that “a plurality of transverse holes each of which is defined on a respective axis intersecting the nail axis 22, and 'perpendicular to the portion of the nail axis at the butt portion 14 of the nail.” Id. at col.2 11.56-59 (emphases added). Thus, the specification limits each of the transverse holes by the common characteristic that each has an axis perpendicular to the nail axis at the butt portion.
[[Image here]]
There is not a single non-perpendicular, “transverse” hole shown or described in the patent. Construing “transverse” to include something other than perpendicular — in spite of the repeated, narrow usage of that term in the specification — would provide patent coverage that is broader than what the inventor actually invented and disclosed in his specification, which clearly should have been the starting point for claim construction. Smith v. Snow, 294 U.S. 1, 14, 55 S.Ct. 279, 79 L.Ed. 721, (1935) (stating “if the claim were fairly susceptible of two constructions, that should be adopted which will secure to the patentee his actual invention”). Since Phillips, we have repeatedly rejected the concept of construing claim terms to have meanings broader than the meaning derived from the intrinsic evidence. For example, in Nystrom v. TREX, Co. this court stated:
[i]n the absence of something in the written description and/or prosecution history to provide explicit or implicit notice to the public — i.e., those of ordinary skill in the art — that the inventor intended a disputed term to cover more than the ordinary and customary meaning revealed by the context of the intrinsic record, it is improper to read the term to encompass a broader definition simply because it may be found in a dictionary, treatise, or other extrinsic source.
424 F.3d 1136, 1145 (Fed.Cir.2005); see also Primos, Inc. v. Hunter’s Specialties, Inc., 451 F.3d 841, 845, 847-48 (Fed.Cir.2006) (affirming district court’s claim construction after district court rejected dictionary definition that was broader and inconsistent with the use of the claim term in the patent at issue); Old Town Canoe Co. v. Confluence Holdings Corp., 448 F.3d 1309, 1318 (Fed.Cir.2006) (patentee is “not entitled to a claim construction divorced from the context of the written description and prosecution history”); Atofina v. Great Lakes Chem. Corp., 441 F.3d 991, 996 (Fed.Cir.2006) (quoting Free Motion Fitness, Inc. v. Cybex Int’l, Inc., 423 F.3d 1343, 1348-49 (Fed.Cir.2005) for the proposition that “in those circumstances where reference to dictionaries is appropriate, the [court’s] task is to scrutinize the intrinsic evidence in order to determine the most appropriate definition” (emphasis added)); In re Johnson, 435 F.3d 1381, 1384 (Fed.Cir.2006) (citing Phillips, 415 F.3d at 1303 for the proposition that “[i]t is well established that dictionary definitions must give way to the meaning imparted by the specification”); Network Commerce, Inc. v. Microsoft Corp., 422 F.3d 1353, 1359-60 (Fed.Cir.2005) (rejecting proposed *815 construction of the term “download component” based on the combination of two dictionary definitions as untenable “in light of the specification”).
Patent scope should be coextensive with what the inventor invented as evidenced by what is disclosed in the patent specification. Netword, LLC v. Centraal Corp., 242 F.3d 1347, 1352 (Fed.Cir.2001) (stating that the claims should not “enlarge what is patented beyond what the inventor has described as the invention”); Renishaw PLC v. Marposs Societa’ per Azioni, 158 F.3d 1243, 1250 (Fed.Cir.1998) (“The construction that stays true to the claim language and most naturally aligns with the patent’s description of the invention will be, in the end, the correct construction.”). Thus, where, as here, the intrinsic evidence clearly provides one meaning for the term “transverse,” it is inappropriate to give that term a broader interpretation, particularly where the only support for the broader interpretation is extrinsic evidence — in this case, a dictionary (which supports the narrower construction as well).
Moreover, the district court’s interpretation of “hole,” which neither party is challenging, makes the majority’s interpretation of “transverse” redundant and nonsensical. The court found that the word “ ‘holes’ in the phrase ‘defining a plurality of at least three transverse holes,’ means openings through the butt portion of the nail.” Claim, Construction Order, at 809. This makes sense in the context of orthopedic implants, because a hole is necessarily through the part, which in the case of an intramedullary nail is to accept a screw. Here, the majority’s definition of “transverse” as “being across” is redundant when read together with the definition of holes. It makes the phrase “transverse holes” mean “openings through across the butt portion of the nail.” The majority’s claim construction thus impermissibly renders the claim term “transverse” meaningless, a methodology that this court has repeatedly denounced. Merck & Co. v. Teva Pharms. USA, Inc., 395 F.3d 1364, 1372 (Fed.Cir.2005) (“A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.”); see also Bicon, Inc. v. Straumann Co., 441 F.3d 945, 950 (Fed.Cir.2006); Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1307 (Fed.Cir.2005). Only if “transverse” requires perpendicularity does each claim term have a distinct meaning.[3]
That “transverse” means perpendicular in direction is further supported by other intrinsic evidence, namely, other patent references cited during prosecution of the '444 patent. For example, U.S. Patent No. 4,475,545, entitled “Bone Nail,” discloses a pair of holes “passing through the nail in transverse relation to its longitudinal direction and both axes of the said both pairs of holes being located in different planes extending in transverse direction relative to the longitudinal direction of the nail.” '545 patent, Abstract. The first hole is defined by the nail entrance 8' and exit 8". The second distal hole is defined by the nail entrance 9' and exit 9". As shown in Figures 4 and 5, both of these holes are perpendicular to the longitudinal axis of the nail at the distal portion. The hole axes are similarly described as being locat *816 ed in a plane “normally extending relative to the longitudinal axis of the nail.” '545 patent, col.3 11.45^46. Thus, the usage of “transverse” in the '545 patent is consistent with the definition requiring perpendicularity.
The narrower definition of transverse is also more consistent with extrinsic evidence that demonstrates how those skilled in the art would understand the term. First, in another patent application filed within a year of the issue date of the '444 patent, the '444 patent’s inventor, Randall Huebner, uses the word “transverse” in a way that clearly denotes perpendicularity in direction. There, as here, Mr. Huebner describes a “transverse hole” extending through a shaft, stating “the head [of the shaft] includes a hole extending there-through in a direction generally transverse to the axis of the shaft.” U.S. Patent No. 5,697,934, col.2 11.45-46 (filed Dec. 2, 1996); see also id. at col.3 1.66-col.4 1.1 (describing another hole as “formed through head 50 with a central axis 54 generally transverse to elongate axis 38 of shaft 32”). Mr. Huebner’s use of transverse in that application clearly shows a directional requirement implicit in the term “transverse” that is not encompassed in the broader definition accepted by the majority. Next, although the district court chose to rely exclusively on a general dictionary that was not contemporaneous with the patent, technical dictionaries, including one highly relevant to the field of orthopedic implants at the time the patent issued, define “transverse” as referring to a perpendicular direction. Dorland’s Medical Dictionary defines transverse as “placed crosswise; situated at right angles to the long axis of a part.” Dorland’s Illustrated Medical Dictionary 1735 (28th ed.1994).
Thus, the intrinsic and extrinsic evidence establish that the '444 patent’s use of “transverse” is only consistent with the narrower definition rejected by the district court and the majority opinion. The only passage of the specification which the majority relies upon to support its broader interpretation of “transverse holes” is the language “[t]he predictability of fracture modes makes the orientation of holes in the illustrated embodiment suitable in most cases.” The majority suggests that this language “admits that the disclosed perpendicular hole orientation may not always be ideal.” Maj. Op. at 807. I respectfully submit that the majority has taken the language out of context and imparted a meaning to it that is not correct. The entire paragraph wherein this sentence is found is discussing Figure 4 and the orientation of the holes relative to each other around the circumference of the nail, not relative to the nail axis at the butt portion 22. That paragraph focuses on the need to orient the screws “to prevent rotation or axial movement of the nail” and discusses that the screws should be located on “opposite sides of the nail.” '444 patent, col.4 11.61-65. Hence, when the very next sentence of the specification refers to the “orientation of the holes,” '444 patent, col.4 11.65-67, it is doing so in the context of their placement around the nail.
Tellingly, the majority opinion offers no other support — intrinsic or extrinsic — for its construction, and in fact, offers no explanation at all for its conclusion that “the claim language covers all ‘transverse’ holes — a word that does not necessarily imply right angles.”[4] Maj. Op. at 807. What, if not the specification, is the major *817 ity using to determine the plain meaning of this term? The district court based its conclusion regarding the plain meaning of transverse on Webster’s Dictionary, which it acknowledged supported both the definition across and perpendicular. In the present case, as in Nystrom, I see no reason why we should adopt one, broader, plain meaning of the term “transverse” when there is another plain meaning that is completely consistent with the intrinsic evidence. When one begins with the patent specification, in my opinion, there is no doubt which of the two meanings of “transverse” is correct.
The majority attempts to distinguish the Nystrom case as a case in which the pat-entee “sought to have [the] claim [at issue] ‘broaden[ed] ... to encompass relatively obscure definitions that are not supported by the written description or prosecution history.’ ” Maj. Op. at 808 (quoting Nystrom, 424 F.3d at 1145). The majority suggests that in Nystrom “[w]e refused to impose a construction broader than the term’s ordinary meaning.” Maj. Op. at 808-09. In this case, the Webster’s Dictionary which provided the basis for the district court’s determination of the term’s ordinary meaning included two definitions for the term transverse (across and perpendicular). Even the district court acknowledged both definitions. In this case, we must choose between two plain meanings of the word “transverse.” As in Nys-trom, we should interpret the claim term by reference to the specification and refuse to read the term “transverse” as encompassing meanings unsupported by even a modicum of intrinsic evidence; otherwise we give the patentee more than what was invented and disclosed to the public.
Even if I did not read the intrinsic record to clearly support the narrower of the two plain and ordinary meanings of the term “transverse,” I would still be compelled by our precedent to conclude that the narrower meaning applies to this limitation. In Athletic Alternatives, Inc. v. Prince Manufacturing, Inc., this court was presented with a case in which there were two plain and ordinary meanings of a term. 73 F.3d 1573, 1579 (Fed.Cir.1996). The court was at an impasse after concluding that the specification, the prosecution history and the doctrine of claim differentiation did not provide guidance on what the plain meaning of the claim term at issue was. Id. at 1579-81 (concluding that “the specification is completely silent with regard to the meaning” of the claim term; that there were “[t]wo strong and contradictory interpretative strands run[ning] through the patent’s prosecution history ... [that] together ... are irreconcilable;” and that after analyzing claim differentiation “we [were] left with two equally plausible meanings of Claim 1”). Faced with such a conundrum, we resorted to the statutory basis for the claims themselves, 35 U.S.C. § 112, ¶2, and concluded that
[w]ere we to allow [the patentee] successfully to assert the broader of the two senses of [the claim term] against Prince, we would undermine the fair notice function of the requirement that the patentee distinctly claim the subject matter disclosed in the patent from which he can exclude others temporarily. Where there is an equal choice between a broader and a narrower meaning of a claim, and there is an enabling disclosure that indicates that the applicant is at least entitled to a claim having the narrower meaning, we consider the notice function of the claim to be best served by the narrower meaning.
Id. at 1581.
Even if the specification was completely silent on whether the transverse holes had to be perpendicular to the nail axis at the butt portion of the nail — which, as dis *818 cussed above, I do not believe it is — we must, according to our precedent, adopt the narrower of the two plain and ordinary meanings of the word “transverse.” Accord Athletic Alternatives, 73 F.3d at 1581. The majority’s rejection of Stryker’s claim construction position as “an improper attempt to read a feature of the preferred embodiment into the claims as a limitation,” fails to identify any language in the specification that demonstrates that the patentee contemplated anything more than transverse holes that are perpendicular to the nail axis at the butt portion. Thus, even adopting the majority’s view of the intrinsic record, I cannot agree with their conclusion.
Based on the foregoing, I conclude that the district court’s construction of the term “transverse holes” was improper and should be reversed. The term “transverse holes” in claim 1 of the '444 patent should be interpreted as “openings through the butt portion of the nail oriented perpendicularly with respect to the longitudinal axis of the butt portion.” Because the uncontested evidence shows that the alleged infringing products do not literally infringe claim 1 of the '444 patent as properly construed, a remand on that issue would not be necessary. Acumed could, however, argue that Stryker’s T2 PHN products infringe claim 1 of the '444 patent under the doctrine of equivalents.[5] Accordingly, I would reverse the judgment of literal infringement and remand for proceedings with respect to infringement under the doctrine of equivalents.

. It should be noted that the claim construction hearing in this case occurred before this court's en banc decision in Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed.Cir.2005). Thus, the district court may have been following the methodology described in Texas Digital Systems, Inc. v. Telegenix, Inc., 308 F.3d 1193, 1201-02 (Fed.Cir.2002), which relied heavily on the use of dictionaries to ascertain the plain meaning of a claim term. After our Phillips decision, which clarified that the Texas Digital approach was not appropriate, the plaintiff asked the district court here to reconsider her claim construction, but that request was denied.

. The court emphasized that the broader definition appeared as the "number one” definition in Webster's dictionary. It should be noted, however, that this order is not indica-five of importance or primacy, but merely reflects historical usage. Merriam-Webster’s Collegiate Dictionary (11th ed.2003) 19a ("Order of Senses”).

. Claim 22, which indirectly depends from independent claim 19, further illustrates this point. Claim 22 recites "a plurality of second securement holes” in the butt portion of the claimed nail. These holes, like the transverse holes in claim 1, are required to go through the butt portion of the nail. But unlike the transverse holes, the securement holes need not be defined by an axis perpendicularly situated with respected to the nail axis at the butt portion.

. The majority’s observation that ''[n]owhere in the specification or the prosecution history do the patentees criticize or distinguish tilted, non-perpendicular holes,” Maj. Op. at 808, only underscores the absence of a written description broad enough to support the meaning that they attribute to the claim term "transverse.”

. Although Stryker argues that Acumed waived the doctrine of equivalents with respect to this claim element because it did not assert that theory at trial under the court’s claim construction, that statement is incorrect. See Exxon Chem. Patents, Inc. v. The Lubrizol Corp., 137 F.3d 1475, 1479 (Fed.Cir.1998) (determining that plaintiff did not waive equivalents arguments where the court’s claim construction made a doctrine of equivalents argument under any other claim construction "moot”).